UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Matthew Chaney,

       Plaintiff,

      v.                                        Civil Action No. 2:13-cv-246

Steven Stewart,

       Defendant.

## OPINION AND ORDER
(Docs. 21, 27)

Plaintiff Matthew Chaney filed this action against Defendant Town of Stowe police sergeant Steven Stewart pursuant to 42 U.S.C. § 1983. The Complaint alleges that Stewart, in his individual capacity, violated Chaney's Fourth Amendment right to be free from an unreasonable seizure by participating in an illegal eviction from a room at the Stowe Inn which had been afforded to Chaney as an employee of the Inn. (Doc. 1.) All parties have consented to direct assignment to the undersigned Magistrate Judge. (Docs. 3, 5.)

Currently pending before the Court is Stewart's Motion for Summary Judgment (MSJ). (Doc. 21.) Chaney opposes the MSJ in a response titled, "Objection Re: Motion for Summary Judgment" (referred to herein as "Opposition"). (Doc. 23.) Stewart filed a Reply responding to the Opposition (Doc. 25), and Chaney thereafter filed a Surreply (Doc. 26). Stewart filed a Motion to Strike Chaney's Surreply, arguing that: (1) the filing

violates Local Rule 7; (2) Chaney has demonstrated no extraordinary circumstances justifying the need to file briefing beyond that allowed by Rule 7; and (3) the Surreply mostly just restates the arguments made in Chaney's Opposition. (Doc. 27.) The Court heard oral argument on the MSJ and the Motion to Strike on March 12, 2015.[1]

Preliminarily, the Court GRANTS Stewart's Motion to Strike Chaney's Surreply (Doc. 27) for reasons of judicial efficiency and fairness, and for the reasons stated in the Motion. The Local Rules do not provide for the filing of a surreply, and Chaney has neither requested leave of court nor presented extraordinary circumstances justifying the filing in this case. *See* L.R. 7(a); *The Lee Family v. Int'l Paper Co.*, No. 1:09-CV-280, 2010 WL 2949635, at *1 n.2 (D. Vt. July 23, 2010). Furthermore, having reviewed the contents of Chaney's Surreply, the Court finds that it does not affect the Court's consideration of Stewart's MSJ. *See Starr v. Cox*, Civil No. 05-cv-368-JD, 2008 WL 1914286, at *2 (D.N.H. Apr. 28, 2008) ("A surreply on this issue will not alter the outcome of the case. Therefore, [the plaintiff] has failed to establish that there are 'extraordinary circumstances' requiring a surreply.").

The only new argument made in Chaney's Surreply is that the Court should consider Chaney's "Supplemental Statement of Undisputed Material Facts." (Doc. 26 at 1-3; *see* Doc. 23-2.) But "[t]his Court has repeatedly reminded litigants that 'the Local

---

[1] Chaney's Complaint also includes a count alleging violation of his Fourteenth Amendment right to procedural due process. In his Opposition, however, Chaney did not argue against that portion of the MSJ seeking dismissal of this count; and at the March 12 hearing, Chaney's counsel verbally withdrew the count. The Court therefore treats this count as abandoned. *Zitta v. Graham*, 996 F. Supp. 2d 272, 280 (D. Vt. 2014) (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 69 (E.D.N.Y. 2003)) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")

Rules do not provide an opportunity for the nonmoving party to file a statement of undisputed facts at the summary judgment stage.'" *Zitta v. Graham*, 996 F. Supp. 2d 272, 275 n.1 (D. Vt. 2014) (quoting *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013) (citing cases)).  Local Rule 56(b) afforded Chaney the opportunity to bring relevant, *disputed* factual matters to the Court's attention, and Chaney took advantage of this rule by filing a Statement of Disputed Material Facts (Doc. 23-1).[2]  The Local Rules contain no provision, however, for the filing of Chaney's "Supplemental Statement of *Un*disputed Material Facts."  (Doc. 23-2 (emphasis added).)  As this Court stated in *Schroeder v. Makita Corp.*, "because [the nonmoving] party's ability to withstand summary judgment depends on the existence of disputed facts, not undisputed ones, there is no need for [that party] to establish undisputed facts at this stage of the litigation."  No. 2:02-CV-299, 2006 WL 335680, at *4 (D. Vt. Feb. 13, 2006).

---

[2]  Although the Court has considered Chaney's Statement of Disputed Material Facts (Doc. 23-1), the Statement is deficient, as acknowledged by Chaney's counsel at the March 12, 2015 hearing.  Instead of contradicting the factual statements made in Stewart's Statement of Undisputed Material Facts (Doc. 21-2), Chaney proffers additional facts and makes legal arguments in his Statement.  (*See, e.g.*, Doc. 23-1 at ¶ 3 ("While the factual statements Defendant cites . . . might be technically accurate . . . , Plaintiff gave Defendant the termination letter that told Plaintiff to leave his room immediately."); ¶ 6 ("A reasonable officer would have recognized the September 10, 2011 Incident as a landlord-tenant dispute.").) Moreover, few of Chaney's statements include any citation to supporting evidence, in violation of Fed. R. Civ. P. 56(c)(1) and Local Rule 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted); *Milnes v. Blue Cross & Blue Shield of Vt.*, No. 1:11-cv-00049 (jgm), 2013 WL 1314520, at *2 n.1 (D. Vt. Mar. 28, 2013) ("A party disputes facts by citing to particular parts of the record in support or showing that the materials cited by the adverse party are either inadmissible or do not establish a dispute.").  Chaney is entitled to make legal arguments regarding the facts alleged in Stewart's Statement, but the Court is not obliged to accept Chaney's characterization of those facts as facts themselves.  Further, Chaney does not respond to or controvert many facts contained in Stewart's Statement in his own Statement, and thus those facts are deemed admitted.  *See Rotman*, 955 F. Supp. 2d at 276 ("All material facts in the movant's statement of undisputed facts are deemed to be admitted unless controverted by the opposing party's statement.").

Accordingly, the Court does not consider Chaney's "Supplemental Statement of Undisputed Facts" in determining Stewart's MSJ, and Stewart is under no obligation to respond to it. *See id.* Moreover, following this Court's prior rulings, the Court will disregard Chaney's additional facts unless it is clear from the parties' briefing that those facts are both material and undisputed. *See Rotman*, 955 F. Supp. 2d at 276 (citing *Schroeder*, 2006 WL 335680, at *3–4; *Post v. Killington Ltd.*, No. 5:07-CV-252, 2010 WL 3323659, at *1 n.1 (D. Vt. May 17, 2010); *Boule v. Pike Indus., Inc.*, No. 5:12-cv-7, 2013 WL 711937, at *1–2 (D. Vt. Feb. 27, 2013)).

For the following reasons, the Court GRANTS Stewart's MSJ (Doc. 21) and DISMISSES this action.

## Relevant Facts

The following facts, which are presented in the light most favorable to Chaney, are undisputed unless otherwise noted. On September 2, 2010, Chaney began working as an assistant innkeeper at the Stowe Inn. (Doc. 21-2 at ¶¶ 1–2.) Under the parties' employment agreement, Chaney would receive $9 per hour plus a room at the Inn in exchange for his services. (*Id.* at ¶ 3.) Less than one week later, on September 8th, Chaney received an "Employee Warning Notice" from the Inn, which stated that he had violated the employment agreement by neglecting customer needs, leaving tasks for other employees, and having an unprofessional attitude and demeanor. (*Id.* at ¶ 5; Doc. 21-3 at 65.)

On September 11, 2010, a few days after Chaney received the Employee Warning Notice, Heather Elie, another employee at the Inn, informed Chaney that he was being

fired and had to vacate his room. (Doc. 21-2 at ¶¶ 8, 10.) Elie and her father, Tim Dow, the Inn's general manager, gave Chaney a letter from Lori Lascola, the Inn's owner, notifying Chaney that, due to his poor performance, his services were no longer required at the Inn. (*Id.* at ¶¶ 11, 12.) The letter requested that Chaney "turn in [his] room key and vacate [his] room immediately." (Doc. 21-3 at 64.) Chaney put the letter in his pocket, stated that he "would think about it," and started walking toward his room. (Doc. 21-2, ¶ 13.)

Elie and Dow followed Chaney, and the three raced to the room. (*Id.* at ¶¶ 14–15.) Dow made it there first, and blocked the door to the room. (*Id.* at ¶ 16.) In a raised voice, Chaney told Dow to "get the fuck away from [the] door" and that he was going to call the police. (*Id.* at ¶¶ 17–18; Doc. 21-3 at 37.) Dow or Elie may have told Chaney that they were going to call the police as well. (Doc. 21-2, ¶ 21.)

Chaney left the Inn and drove to the Stowe Police Department. (*Id.* at ¶ 22.) When he arrived there, he overheard a dispatcher announcing that he was sending an officer to the Inn in response to a complaint about an "unruly person." (*Id.* at ¶¶ 23–24.) Chaney told the dispatcher that he was the "unruly person," and he was told to wait for an officer. (*Id.* at ¶¶ 24–25.) Approximately 10–15 minutes later, Sergeant Stewart arrived to meet with Chaney. (*Id.* at ¶ 26.) Prior to Stewart and Chaney meeting, Elie had spoken with Stewart, advising him that Chaney worked at the Inn and had a room there. (Doc. 23-2, ¶ 5.)

Chaney told Stewart that he lived and worked at the Inn but the Inn was firing him and had "kicked [him] out" of his room there. (Doc. 21-2, ¶¶ 28–30.) Showing Stewart

the termination letter from the Inn, Chaney told Stewart that he had no money and needed a place to stay.  (*Id.* at ¶ 31; Doc. 23-2, ¶ 7.)  Stewart told Chaney that he had received a complaint from Elie about Chaney using foul language when he was fired.  (Doc. 21-2, ¶ 32.)  Stewart further stated that there was nothing he could do, including preventing Dow from blocking him from entering his room at the Inn.  (*Id.* at ¶ 33; Doc. 21-3 at 58–59, 62.)  Stewart advised Chaney that the Inn "could fire him and kick him out [of his room,] and he would have to leave."  (Doc. 21-2, ¶ 34.)

Although Stewart was a 30-year veteran of the Stowe Police Department with training in landlord-tenant dispute resolution, and although the Department regularly referenced a pamphlet entitled "Renting in Vermont," Stewart did not recognize the dispute between Chaney and the Inn as a landlord-tenant matter.  (*Id.* at ¶¶ 27, 54; Doc. 23-2, ¶¶ 8–10.)  Rather, Stewart believed his function was merely to "keep the peace" between Chaney and other employees at the Inn.  (Doc. 23-5 at 7.)

After meeting with Stewart, Chaney left the Police Department and secured two nights of free lodging at a nearby hotel.  (Doc. 21-2, ¶¶ 38–39.)  While at that hotel, Chaney called Lascola, the Inn owner, to complain about being fired and removed from his room.  (*Id.* at ¶ 40.)  Chaney was upset and raised his voice, telling Lascola that she would hear from his lawyer.  (*Id.* at ¶ 41.)  Chaney then returned to the Stowe Police Department and met with Stewart again.  (*Id.* at ¶ 42.)  He told Stewart about his telephone conversation with Lascola.  (*Id.* at ¶ 43.)  Stewart asked Chaney if he had threatened Lascola, and Chaney said he had not.  (*Id.* at ¶ 44.)  Stewart told Chaney he would meet him at the Inn, and then went to the Inn "to make sure . . . there was no

confrontation between [Chaney] and the hotel management." (Doc. 21-4, ¶ 11; Doc. 21-2, ¶¶ 45–46.)

Soon thereafter, Chaney returned to the Inn to collect his belongings. (Doc. 21-2, ¶ 48.) Stewart arrived approximately one minute later and knocked on Chaney's door. (*Id.* at ¶ 49.) Chaney asked Stewart if Stewart would retrieve some food, CDs, and other items from the Inn, which Stewart did, bringing them to Chaney. (*Id.* at ¶ 50.) Everything appearing calm, Stewart left the Inn while Chaney was still assembling his belongings. (*Id.* at ¶ 55.) At no time did Stewart raise his voice when speaking with Chaney, threaten to arrest Chaney, make physical contact with Chaney, or prevent Chaney from entering his room at the Inn. (*Id.* at ¶¶ 58–62.)

After Chaney cleaned out his room, he and Elie signed the letter terminating Chaney's employment at the Inn. (*Id.* at ¶ 56.) Thereafter, Chaney sued the Inn in Vermont Superior Court for an illegal eviction, for which he received a settlement. (*Id.* at ¶ 66.)

## Discussion

Stewart makes the following arguments in his MSJ: (1) Chaney's claims fail because there was no state action; (2) Stewart did not violate Chaney's Fourth Amendment right against unreasonable seizure because he did not "seize" Chaney's property and his actions were reasonable; (3) Stewart did not violate Chaney's Fourteenth Amendment right to procedural due process because Stewart did not deprive Chaney of his interest in the room at the Stowe Inn and, even if he did, Chaney had available to him

adequate post-deprivation remedies;[3] and (4) Stewart is entitled to qualified immunity because his conduct did not violate a clearly established federal right.  (Doc. 21-1.)  In opposition, Chaney contends that Stewart violated his rights under the Fourth Amendment because he affirmatively assisted in an illegal eviction by telling Chaney at the police station, and after the Stowe Inn had taken possession of the room, that he was required to leave that room, and by being present when Chaney was later permitted by Inn personnel to retrieve personal articles.  (Doc. 23.)  Chaney further asserts that Stewart is not entitled to qualified immunity because a reasonable officer would have known that he was assisting in the unlawful seizure of Chaney's dwelling, and thus a clearly established right was at stake.  (*Id.*)

## I.     Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party meets that burden, the non-moving party "must come

---

[3]  As noted previously, Chaney has abandoned this claim.

8

forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). It is not enough to "simply show that there is some metaphysical doubt as to the material facts," and the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted).

In ruling on a motion for summary judgment, the Court is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). Nonetheless, "'[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). The Court's function in considering a motion for summary judgment is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson*, 477 U.S. at 255; *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988).

## II.     State-Action Requirement

Chaney claims Stewart violated his Fourth Amendment right to be free from unreasonable seizure "by participating in an illegal eviction and ordering [Chaney] to leave the Inn." (Doc. 1, ¶ 24.) Stewart argues that this constitutional claim fails for lack of state action in the seizure. Specifically, Stewart contends that his failure to prevent the Inn from ordering Chaney to vacate his room does not amount to state action, and any

assistance the Inn gained from Stewart's *in*action was incidental to the eviction. (Doc. 21-1 at 8.) For the following reasons, the Court agrees with Stewart and finds no state action exists.

Title 42 U.S.C. § 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights[,] and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, the plaintiff must allege that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Thus, for Chaney to state a claim under § 1983, he must show that the seizure of his room at the Inn was the result of state action. *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003); *U.S. v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). It is not enough that the *Inn's* conduct might have been wrongful; the focus must be on *Stewart's* conduct. In the particular context of claims arising from the seizure of private property, the Seventh Circuit explained: "The protections of the Fourth Amendment apply only to

governmental action and are 'wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984)).

As an on-duty police officer, Stewart was clearly a state actor.  The question is whether his official involvement in the otherwise private dispute between Chaney and the Inn was sufficient to constitute state action.  Chaney's allegations against Stewart are based on: (1) Stewart's failure to intervene to prevent Chaney's eviction from the Inn; (2) Stewart's statement to Chaney at the police station, after Chaney was blocked from entering his room at the Inn, that there was nothing Stewart could do and that Chaney would have to leave the Inn; and (3) Stewart's presence at the Inn when Chaney retrieved some personal effects.  The crux of Chaney's Complaint is thus Stewart's *inaction*, which occurred *after* Chaney had already been prevented from accessing his room at the Inn.

There is no clear point at which police action in connection with a repossession or eviction becomes "state action."  *See Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999).  The Second Circuit explained: "[N]o bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene of a repossession become state action in aid of the repossession."[4]  *Id.*  But the case law establishes that

---

[4]  The facts at issue in *Barrett* and other cases cited herein, involve a creditor-debtor relationship, which does not exist in this case.  Despite this factual difference, the underlying legal principles followed in those cases are applicable to this case for the purpose of establishing whether Stewart's conduct constituted state action.  *See Zitta*, 996 F. Supp. 2d at 282 n.8.

mere police presence during a repossession is insufficient. *Id.*; *see, e.g.*, *Dolan v. Cassella*, 543 F. App'x 90, 91–92 (2d Cir. 2013) (summary order); *Wright v. Nat'l Bank of Stamford*, 600 F. Supp. 1289, 1295 (N.D.N.Y. 1985). And the Supreme Court has held that a state actor's mere inaction or acquiescence in private wrongful conduct does not convert that private conduct into state action. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–66 (1978); *see also Sauls v. Bristol-Myers Co.*, 462 F. Supp. 887, 889 n.4 (S.D.N.Y. 1978).

An officer's presence at a private seizure of property for the purpose of keeping the peace between the parties, rather than to actively assist in the seizure, has been found insufficient to constitute state action. *See Hensley v. Gassman*, 693 F.3d 681, 689 (6th Cir. 2012); *Mitchell v. Gieda*, 215 F. App'x 163, 165 (3d Cir. 2007) ("[A]n officer's presence at the scene of, and acquiescence in, a private repossession is not state action unless accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party."); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510–13 (5th Cir. 1980) (no state action where officer, upon arriving at scene, informed debtor that repossession was a civil matter and the only reason police were there was to quiet a reported disturbance); *Ostensen v. Suffolk Cnty.*, 378 F. Supp. 2d 140, 149 (E.D.N.Y. 2005) (no state action because officer's "actions at the scene appear to be an effort to keep the peace between the parties"). As one court explained, "[t]here is a distinction between a law enforcement officer attending a private seizure to ensure that it transpires in an orderly and peaceful manner[,] and actively assisting in unlawful conduct." *Id.*

In *Barrett*, the Second Circuit held that, where an officer's actions consist of merely "prevent[ing] violence in the event of a breach of the peace," there is no state action. 189 F.3d at 303. The court explained that "the crucial question is whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." *Id.* at 302–03. The officer in *Barrett* had arrived at the scene of a repossession and witnessed an exchange of inflammatory words and the objector striking the repossessor. *Id.* at 299. The officer told the objector that the repossession was a civil matter and that "if you start any trouble here, you'll be going in the back seat of my car." *Id.*

The Second Circuit found no state action and affirmed the district court's grant of summary judgment to the defendants because the officer's actions "amounted to no more than the carrying out of his duty to prevent violence in the event of a breach of the peace." *Id.* at 303. The court explained that, even though the officer was a state actor at the scene, "the fact of his peacekeeping presence did not convert the private act of repossession . . . into state repossession action." *Id.*; *see also Mitchell*, 215 F. App'x at 166 ("[A]ctions amount[ing] simply to [an officer's] acquiescence in the repossession and presence at the scene to prevent the onset of violence" did not constitute state action); *United States v. Coleman*, 628 F.2d 961, 964 (6th Cir. 1980) ("[M]ere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into state action."); *Sullivan v. Stein*, 487 F. Supp. 2d 52, 72–73 (D. Conn.

2007) ("[T]he officers' failure to act on the [plaintiffs'] complaints cannot be transformed into state action violative of the [plaintiffs'] Fourth and Fourteenth Amendment rights.").

Similarly, in *Zitta*, this Court recently found that an officer's involvement in the repossession of a fork-lift truck did not constitute state action. 996 F. Supp. 2d at 282–83. The plaintiffs claimed that the officer unlawfully assisted the repossession by giving the repossessor permission to drive away with the truck over the objection of the plaintiffs, who claimed to be its rightful owners. But the Court disagreed, finding that, at best, the officer's involvement was "'greater than mere presence, yet still insufficient to constitute state action in aid of the repossession.'" *Id.* at 282 (quoting *Barrett*, 189 F.3d at 302).

Generally, the likelihood that state action will be found increases when officers take a more active role in a repossession or seizure of property, and "as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action." *Barrett*, 189 F.3d at 302. Thus, in *Soldal v. County of Cook*, for example, the Seventh Circuit found that the state action issue survived summary judgment, where police officers, despite knowing that well-established Illinois law required landlords to obtain a court order of eviction in order for an eviction to be lawful: (1) accompanied a landlord to unlawfully evict the plaintiffs by removing their trailer from a rented lot; (2) remained on the scene throughout the entirety of the eviction process; and (3) prevented the plaintiffs from lawfully resisting the eviction. 942 F.2d 1073, 1074–75 (7th Cir.

1991) (en banc), *rev'd on other grounds*, 506 U.S. 56 (1992);[5] *see also Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action where, after plaintiff yelled at repossessor to get away from his truck, officer ordered plaintiff to "stand back or get away" and told plaintiff that further interference would result in his arrest).  Similarly, in *Cochran v. Gilliam*, the Sixth Circuit found that the defendants took an active role in the seizure of the plaintiff's personal property by carrying items out of the house and assisting the landlords in loading the plaintiff's property into a truck.  656 F.3d 300, 308 (6th Cir. 2011).

In *Marcus v. McCollum*, the Tenth Circuit noted that the state-action issue in the context of police officer involvement with a private party's repossession of property is "particularly fact-sensitive, so the circumstances must be examined in their totality."  394 F.3d 813, 819 (10th Cir. 2004) (internal quotation marks omitted).  The *Marcus* court summarized a list of non-exhaustive factors that courts have considered in determining the state-action issue in this context.  They include the following conduct of the officer, which may indicate the officer's assistance in the repossession: accompanying the private party onto the scene, telling the debtor that the repossession was legal, ordering the debtor to stop interfering or else he would go to jail, intervening at more than one step in the repossession process, failing to depart before the repossession has been completed, standing in close proximity to the creditor, and unreasonably recognizing the

---

[5]  Despite Chaney's reliance on the Supreme Court's decision in *Soldal*, 506 U.S. 56 (1992), the Supreme Court in that case expressly declined to review the Seventh Circuit's holding that there was sufficient state action to support a § 1983 action, *id.* at 60 n.6.

documentation of one party over the other. *Id.* at 818–19 (collecting cases). The *Marcus* court concluded that "the overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.*

This "overarching lesson" is particularly salient here, even though the facts in *Marcus* do not perfectly align with the facts here, partly because the repossession or seizure of property in this case was in fact an eviction from a rental property where Chaney was living, and partly because Inn employees had already barred Chaney from his room by the time Chaney spoke with Stewart at the police station, making Stewart's comment that Chaney "had to leave" far from critical to the eviction. (Doc. 21-2, ¶¶ 33–34.) In all likelihood, if neither Chaney nor Inn employees had involved the police, the eviction still would have happened. *See, e.g.*, *Moore v. Carpenter*, 404 F.3d 1043, 1046 (8th Cir. 2005) ("When a police officer is involved in a private party's repossession of property, there is no state action if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help.").

Chaney claims that Stewart prevented him from "contesting" his eviction from the Inn (Doc. 23 at 13), but a curbside contest over the Inn's possession of the room was surely best avoided. And it would have been foolhardy for Stewart to encourage Chaney

to attempt to take repossession of the room.[6]  Chaney also claims that Stewart "affirmatively intervened" in his dispute with the Inn.  (Doc. 23 at 6.)  But Stewart's conduct must be viewed in the sequence of the unfolding events.  As discussed above, Chaney had already been denied access to his room by Inn employees when he first met with Stewart at the station.  Stewart's statements to Chaney at that initial meeting, therefore, could not have been the critical link to the seizure.  Moreover, Chaney has no constitutional right to a police investigation of the lawfulness of that seizure, or the arrest or prosecution of the Inn employees.  *Zitta*, 996 F. Supp. 2d at 283.  Also noteworthy, Stewart did not threaten to arrest Chaney, did not align himself physically or otherwise with Inn employees, and did not assist Inn employees in blocking Chaney from entering his room to collect his belongings.  (Doc. 21-2 at ¶¶ 62–64.)  Chaney vacated his room at the Inn on his own accord, and independently arranged for another place to stay.  (*Id.* at ¶¶ 38–39, 45, 48–57.)

Later, when Stewart arrived at the Inn to ensure there was no disturbance of the peace, he found Chaney removing his belongings from his room.  (*Id.* at ¶¶ 48–49.)  Stewart left the Inn while Chaney was still packing up the room.  (*Id.* at ¶ 55.)  Given these facts, even if Stewart's initial statement to Chaney at the police station that Chaney would have to leave the Inn helped persuade Chaney to vacate his room, it cannot be said that Stewart encouraged Chaney's eviction or acted in furtherance of any purpose other

_____

[6]  One state court recently noted "the potential for retaliatory violence . . . inherent [in] any forcible real property repossession."  *Nickens v. Mount Vernon Realty Grp., LLC*, 54 A.3d 742, 753 (Md. 2012).

than to maintain peace and order between the parties.  *See Longmoor v. Nilsen*, 312 F. Supp. 2d 352, 360–61 (D. Conn. 2004) (finding no state action on summary judgment where, even accepting as true that police told plaintiff her car would be towed whether or not she surrendered her keys, there was no evidence repossessor and police were working together, and "any actual inducement achieved by the officers [could] only be ascribed to their own initiative" of keeping the peace); *cf. Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 190–91 (3d Cir. 2005) (in tenant's § 1983 action alleging police officer's violation of her Fourth Amendment rights regarding warrantless entry into her apartment to enable former boyfriend to obtain his belongings, officer's motion for summary judgment denied on issue of whether officer was state actor, because landlord opened tenant's apartment door at the direction of police officer).

Chaney contends that Stewart's reliance on cases such as *Barrett* and *Zitta*— which involve the repossession of personal property—is misplaced here.  (*See* Doc. 23 at 3.)  He argues that the United States Supreme Court's decision in *Soldal* is more applicable, "provid[ing] the analytical framework for when a law enforcement officer deprives a tenant of an interest in a residence."  (*Id.* at 4 (citing *Soldal*, 506 U.S. 56).)  As noted previously, however, in *Soldal*, the Supreme Court did not examine the question of "state action," given that the issue had been conceded by the defendant.  More importantly, it is not the nature of the property interest that guides measurement of state action, but rather, the state actor's involvement in the alleged repossession or eviction. *See, e.g.*, *Barrett*, 189 F.3d 297; *Zitta*, 996 F. Supp. 2d 272.  Here, given the controlling

Second Circuit precedent discussed above, the undisputed facts demonstrate that Stewart's actions were incidental to Chaney's eviction from the Inn, and thus do not constitute state action in aid of that eviction. As such, summary judgment is granted in Stewart's favor regarding Chaney's § 1983 claims.

## III.    Qualified Immunity

Stewart also contends that the claims against him should be dismissed because he is entitled to qualified immunity. Qualified immunity protects officials from liability for civil damages "as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether a right is clearly established, the Court must consider: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

The "dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 194–95. An officer "will not be held liable for discretionary actions that 'could reasonably have been thought consistent with the rights [he is] alleged to have violated.'" *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). And "[t]he presumption in favor of finding qualified immunity is

necessarily high, protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Where, as here, "there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court."  *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

There are no cases from the Second Circuit or the Supreme Court presenting materially similar facts to those at issue here that would have put Stewart on notice that his conduct was unlawful.  "[I]t would gravely distort the doctrine of qualified immunity to hold that a[n] . . . official should 'fairly be said to know that the law forb[ids] conduct not previously identified as unlawful.'"  *Doninger v. Niehoff*, 642 F.3d 334, 347 (2d Cir. 2011) (final alteration in original) (quoting *Harlow*, 457 U.S. at 818).  As discussed above, Stewart acted in an objectively reasonable manner in response to the complaints of Chaney and other Inn employees regarding the events surrounding Chaney's termination and eviction.  Even if Stewart may have been mistaken in believing his actions were justified, it cannot be said that he acted in a "plainly incompetent" manner.  *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) ("Normally, it is only the 'plainly incompetent or those who knowingly violate the law' . . . who are precluded from claiming the protection of qualified immunity.") (quoting *Malley*, 475 U.S. at 341); *see also Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but

the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted).

Chaney asserts that the doctrine of qualified immunity does not apply here because a reasonable officer, realizing that "a landlord-tenant relationship was at hand" (Doc. 23 at 13), "would have or should have known that it was unlawful to tell [Chaney] to leave his dwelling" (*id.* at 12). This argument is premised on Chaney's claim that Stewart encouraged the Inn's violation of Vermont's statutory scheme requiring that evictions be accomplished through judicial action. (*See* Doc. 23 at 3–6 (citing, *e.g.*, 9 V.S.A. § 4463(c) ("No landlord may directly or indirectly deny a tenant access to and possession of the tenant's property, except through proper judicial process.")).) But Chaney cannot use a private party's alleged violation of a state law to bootstrap his claim against Stewart, a state actor, for alleged violations of federal constitutional rights. *See Davis v. Scherer*, 468 U.S. 183, 194–95 & n.12 (1984) (holding that an officer's violation of clearly established state law is not enough to overcome qualified immunity in a § 1983 suit; the plaintiff must show that the very law whose violation forms the basis of the federal action was clearly established); *Hill v. Selsky*, 487 F. Supp. 2d 340, 343 (W.D.N.Y. 2007) ("[T]he Supreme Court of the United States has held that the existence of qualified immunity does not depend on whether the right in question was clearly established under *state* law, but on whether the *federal* right giving rise to the claim was clearly established at the time of the alleged violation."); *MacCaffray v. U.S.*, No. 2:97-CV-403, 1998 WL 560047, at *5 (D. Vt. Aug. 27, 1998) ("[T]he violation of a state law unrelated to the basis of the suit does not deprive an official of qualified immunity . . . .

Without evidence of a violation of clearly established constitutional or federal statutory rights, qualified immunity applies . . . .") (citations omitted).

In deciding whether a right is clearly established, and thus whether qualified immunity applies, courts must look beyond generalized constitutional protections and determine if the asserted right was clearly established in a particularized sense. *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001). Chaney fails to point to any authority supporting his contention that Stewart's particular conduct violated an established constitutional right in a particularized sense. As discussed above, there is no bright line indicating when an officer's conduct at the scene of a private repossession (or eviction) becomes state action. *See Barrett*, 189 F.3d at 302; *Zitta*, 996 F. Supp. 2d at 284 ("The specific point at which an officer's conduct reaches state action in a private repossession has not been 'clearly established,' and this makes all the difference."); *Pollock v. Ellingsen*, No. 3:07-cv-0637, 2009 WL 909629, at *2 (N.D.N.Y. Apr. 1, 2009) ("Second Circuit precedent indicates that there is no clear line at which presence at a repossession becomes state action."). Rather, the law in this area "is particularly fact-sensitive, and complicated." *Moore*, 404 F.3d at 1046 (citations and internal quotation marks omitted).

The particular facts at issue here demonstrate that it would not be clear to a reasonable officer in Stewart's situation that his conduct was contrary to clearly established federal law. Even viewed in the light most favorable to Chaney, Stewart's conduct was objectively legally reasonable. *See Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012) ("Officials are not liable for bad guesses in gray areas; they are liable for

transgressing bright lines." (internal quotation marks omitted)).  Stewart is therefore entitled to qualified immunity.

### Conclusion

For these reasons, the Court finds that Stewart's conduct did not constitute state action, and thus Stewart did not commit a constitutional violation.  Even if his conduct did constitute state action, the Court finds that Stewart is entitled to qualified immunity.[7]  Accordingly, Stewart's Motion for Summary Judgment (Doc. 21) is GRANTED, and this action is DISMISSED.

Dated at Burlington, in the District of Vermont, this 7th day of April, 2015.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

---

[7]  Because there was no state action and Stewart is entitled to qualified immunity, the Court does not reach Stewart's argument that the seizure of Chaney's room at the Inn was reasonable under controlling Fourth Amendment standards.  (*See* Doc. 21-1 at 12–13.)